UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Webster Grading, Inc.,<br>d/b/a Rud Excavating of Webster, | Civil No. 10-CV-2207 (SRN/FLN) |
| **Plaintiff,** | |
| v. | |
| Granite Re, Inc., | MEMORANDUM OPINION AND<br>ORDER |
| **Defendant,** | |
| _____ | |
| Granite Re, Inc., | |
| **Counter-Claimant**, | |
| v. | |
| Webster Grading, Inc.,<br>d/b/a Rud Excavating of Webster, | |
| **Counter-Defendant** | |
| _____ | |
| Nyen Excavating, Inc., and<br>Granite Re, Inc., | |
| **Plaintiffs,** | |
| v. | |
| United Fire & Casualty Company, | |
| **Defendant.** | |

Julia A. Doherty, Kyle E. Hart and Theodore V. Roberts, Fabyanske, Westra, Hart & Thomson, PA, 800 LaSalle Avenue, Suite 1900, Minneapolis, Minnesota 55402, for Plaintiff and Counter-Defendant Webster Grading and Defendant United Fire & Casualty Company

1

Brian W. Varland and William D. Hull, Coleman, Hull and Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, Minnesota 55437; Evan B. Gatewood and Robert Magrini, Hayes, Magrini & Gatewood, 1220 North Walker, Oklahoma City, Oklahoma 73103, for Defendant and Counter Claimant Granite Re, Inc. and Nyen Excavating

___

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Amended Motion to Compel Arbitration and Stay [Doc. No. 29] filed by Webster Grading, Inc. For the reasons that follow, the motion is denied.

I.   **FACTUAL BACKGROUND**

This lawsuit arises out of a construction project involving a trunk highway in Waseca County, Minnesota. Plaintiff Webster Grading, Inc., d/b/a Rud Excavating of Webster ("Rud") is a Minnesota construction company. The Minnesota Department of Transportation ("MnDOT") entered into a contract with C.S. McCrossan Construction, Inc. ("McCrossan") to perform the construction work. McCrossan, in turn, subcontracted a portion of its work to Rud. (Def's Opp'n Mem. at 3 [Doc. No. 37].) In connection with their subcontract, in 2008, United Fire & Casualty Company ("United Fire") issued payment and performance bonds in which United agreed to uphold the contractual obligations made by Rud, the principal, to McCrossan, the obligee. The United Fire payment bond purportedly specifies that it is for the express benefit of claimants, i.e., those having a direct contact with Rud for labor, material, or both, used in the performance of the contract. (Id.)[1] It also purportedly provides that any lawsuits to recover on the bond must be brought in state or federal court in the state or district in which the project is

---

[1] While Defendant identifies Exhibit C as the "United Fire Bond," the bond in question appears to be the United Fire performance bond, as opposed to the payment bond. Because there appears to be no factual dispute regarding the terms of this bond, the Court relies upon Defendant's factual representations in its opposition memorandum.

situated.  (Id.)

Rud commenced performance on the highway project in 2008, but experienced construction difficulties due to certain site conditions.  In light of these difficulties, Rud ultimately subcontracted a portion of its work to Nyen Excavating, Inc. ("Nyen").  (Second Aff. of Dean Trahan ¶ 4 [Doc. No. 42].)  Rud and Nyen entered into a subcontract for the project.  (Rud/Nyen Subcontract, Ex. B to Def's Opp'n Mem. [Doc. No. 38-2].)  Defendant Granite Re, Inc. ("Granite Re") is a foreign insurance company authorized to issue construction bonds on public construction projects in Minnesota.  (Compl. ¶¶ 1-2.)  Granite Re issued payment and performance bonds with respect to the Rud/Nyen subcontract work.  (Id. ¶ 3.)  Under the terms of the Granite Re bonds, Nyen is the principal and Rud is the obligee.  (Id.)

The subcontract identifies Rud as the Contractor, Nyen as the Subcontractor, MnDOT as the Owner, and C.S. McCrossan as the General Contractor.  (Rud/Nyen Subcontract, Ex. B to Def's Opp'n Mem. [Doc. No. 38-2].)  The Rud/Nyen subcontract identifies two types of possible claims: (1) those for which the Owner, MnDOT, might be liable, to be initiated by the Subcontractor, Nyen; and (2) those between the Subcontractor, Nyen, and the Contractor, Rud.  The parties refer to the first type of claim, i.e., claims involving MnDOT, as "pass-through" claims.   As to the two types of claims, the Rud/Nyen subcontract specifically provides as follows:

> 5.3.2 CLAIMS RELATING TO OWNER.  The Subcontractor agrees to initiate all claims for which the OWNER is or may be liable in the manner and within the time limits provided in the Subcontract Documents for like claims by the CONTRACTOR upon the OWNER and in sufficient time for the CONTRACTOR to initiate such claims against the OWNER in accordance with the Subcontract Documents.  At the Subcontractor's request and expense to the extent agreed upon in writing, the CONTRACTOR agrees to permit the

3

> Subcontractor to prosecute a claim in the name of the CONTRACTOR for the use and benefit of the Subcontractor in the manner provided in the Subcontract Documents for like claims by the CONTRACTOR upon the OWNER.
>
> 5.3.4. CLAIMS RELATING TO CONTRACTOR. The Subcontractor shall give the CONTRACTOR written notice of all claims not included in Subparagraph 5.3.2 within fourteen (14) Days of the Subcontractor's knowledge of the facts giving rise to the event for which claim is made. Thereafter, the Subcontractor shall submit written documentation of its claim, including appropriate supporting documentation, within twenty-one (21) Days after giving notice, unless the Parties agree upon a longer period of time. The Contractor shall respond in writing denying or approving, in whole or in part the Subcontractor's claim no later than fourteen (14) Days after receipt of the Subcontractor's documentation of claim. All unresolved claims, disputes and other matters in question between the CONTRACTOR and the Subcontractor not relating to claims included in Subparagraph 5.3.2 shall be resolved in the manner provided in Article 11.

(Id. at §§ 5.3.2-5.3.4.) Article 11 provides that, as to disputes between only Rud and Nyen, the parties are to first attempt to reach resolution through direct discussions, then to attempt mediation, and finally, "[i]f the matter is unresolved after submission of the matter to a mitigation procedure or mediation, the Parties shall submit the matter to the binding dispute resolution procedure" of "[l]itigation in either the state or federal court having jurisdiction of the matter in the location of the Project." (Id. at § 11.5.3.)

Anthony Nyen, President of Nyen Excavating, attests that while working on the Project, Nyen "encountered differing site conditions and other problems entitling it to additional compensation." (Aff. of Tony Nyen ¶ 4, Nyen Supp'l Ex. [Doc. No. 43-1].) Nyen submitted written claims to Rud. (Id.) Rud presented Nyen with a "Claims Prosecution/Liquidating Agreement" ("CPA"), apparently drafted by Rud's legal counsel. (Id.) Nyen contends that Rud informed him that the CPA was needed in order to present Nyen's pass-through claims to MnDOT. (Id.) "Based on those representations, [Nyen] signed the CPA" and faxed it to Rud.

4

(Id.)  Rud denies that it ever made signing the CPA a condition of Rud's willingness to pass through Nyen's claims to MnDOT.  (Second Trahan Aff. ¶ 8 [Doc. No. 42].)  Rather, Rud indicated that it would not help Nyen draft its claims, absent the CPA, because, according to Rud, nothing in the Rud/Nyen subcontract required Rud to draft claims for Nyen or assist Nyen with drafting.  (Id.)

At the time the CPA was signed, Nyen attests that the parties "were not contemplating any claims by and between only Rud and Nyen – the CPA only applied to 'pass-through' claims against MnDOT."  (Nyen Aff. ¶ 4 [Doc. No. 43-1].)  It was Nyen's understanding that Rud never signed the CPA.  (Id.)  However, Rud's Project Manager, Dean Trahan, attests that upon receipt of Nyen's signed copy of the CPA, "Rud then signed it and placed it in the subcontractor's file."  (Aff. of Dean Trahan ¶¶ 4-5 [Doc. No. 33].)

In the "Recitals" section, the CPA acknowledges the additional costs incurred by Nyen on the Project, "for which costs [Nyen] has or will submit claims to Rud to assert against the Owner through [McCrossan]."  (CPA Recitals, Ex. C to Trahan Aff. [Doc. No. 33-3].)  As Nyen lacked a contractual relationship with MnDOT,  the CPA provided a specific mechanism by which Rud could submit and prosecute Nyen's claims in Rud's name, for the benefit of Nyen.  (CPA ¶ 2, Ex. A to Trahan Aff. [Doc. No. 33-3].)  Under the terms of the CPA, Rud and Nyen agreed to not make any claims against each other for "defective plans, delay, disruption, suspension of work, changes, changed conditions, damages and/or additional costs on the Project based on anything that has happened to date, except to the extent that the claim is a pass-through claim against the Owner and included in the Claims."  (Id. ¶ 5.)  Most importantly, for purposes of the instant motion, the CPA further provides that "[a]ny dispute arising out of, relating to, or concerning this

Agreement or the making thereof shall be decided by arbitration. . . ." (Id. ¶ 12.)

Shortly after signing the CPA, Nyen reviewed it with legal counsel. By letter dated October 20, 2009, Nyen notified Rud that Nyen was rescinding the CPA. (Nyen Aff. ¶ 5 [Doc. No. 43-1]; 10/20/09 Letter from R. Schmid to D. Trahan, Ex. B to Trahan Aff. [Doc. No. 33-2].) Rud informed Nyen that it was "too late to do that, and that Rud had acted in Nyen's behalf in a number of ways including working with Nyen on its claims." (Trahan Aff. ¶ 7 [Doc. No. 33].) Rud contends that during the eight-day period between October 12 and October 20, it shared information with Nyen in reliance on the existence of the CPA. (Id.) Nyen, however, attests that it is unaware of any actions taken by Rud in reliance on the CPA. (Nyen Aff. ¶ 5 [Doc. No. 38-1].)

Rud contends that after Nyen attempted to rescind the CPA, Nyen later agreed to keep the agreement in place and provided a second signed CPA to Rud. (Trahan Aff. ¶ 8 [Doc. No. 33].) The second document bears the same signature date as the original – October 12, 2009. (Id. ¶ 9; Ex. C to Trahan Aff. [Doc. No. 33-3].) Rud contends that it contacted Nyen and suggested that the parties sign another copy bearing the then-current date, in order to avoid confusion about recision. (Trahan Aff. ¶ 10 [Doc. No. 33].) Rud attests that while Nyen agreed to do so, it never provided Rud with a newly-dated document. (Id. ¶ 12.) Nyen, however, contends that it refused to re-sign the "rescinded" version of the CPA, despite Rud's request that it do so. (Nyen Aff. ¶ 6 [Doc. No. 43-1].)

On October 28, 2009, the parties met to discuss the situation with respect to the resolution of Nyen's claims. (Second Trahan Aff. ¶ 3 [Doc. No. 42]; Nyen Aff. ¶ 6 [Doc. No. 43-1].) Nyen's counsel proposed a different form of agreement, to which Rud objected. (Nyen Aff. ¶ 6

6

[Doc. No. 43-1].)  Nyen did not believe that the parties were bound by the CPA.  (Id.)

Nyen also contends that it discovered for the first time in early 2010 that Rud had known, prior to entering into the subcontract with Nyen, about the site conditions that ultimately created a financial hardship for Nyen.  (Id. ¶ 7.)  Nyen asserts that it eventually learned that Rud itself had asserted substantial claims against MnDOT itself for the identical conditions.  (Id.) However, Trahan, Rud's Project Manager, maintains that upon hiring Nyen, he informed Nyen that Rud was subcontracting with them because of the difficult conditions and because Nyen had specialized equipment to deal with those conditions.  (Second Trahan Aff. ¶ 4 [Doc. No. 42].) Trahan contends that he discussed these issues with various Nyen employees and that any assertion that Rud attempted to conceal the conditions is false.  (Id.)  Trahan attests that he did not give Nyen copies of Rud's claims with MnDOT because the claims were not relevant to Nyen.  (Id.)  In any event, Trahan contends that Nyen was present at weekly meetings with McCrossan, at which Rud's claims resulting from the difficult site conditions were "openly discussed."  (Id.)

Rud contends that at the time the CPA was signed, Nyen agreed that all of its claims on the Project were pass-through claims and that nothing was directed at Rud.  (Id. ¶ 7.)  Rud further avers that its claims against Nyen "arose when Nyen walked off the job, which was after the CPA was signed."  (Id.)

### III. PROCEDURAL HISTORY

Rud initially commenced suit against Defendant Granite Re on May 7, 2010 in Minnesota state court.  Granite Re removed the action to this Court on June 1, 2010.  (Notice of Removal [Doc. No. 1].)  In connection with its answer, Granite Re filed a counterclaim against Rud.

7

(Answer & Counterclaim [Doc. No. 3].) Following the parties' Rule 26(f) pretrial planning conference, the Court issued a Pretrial Scheduling Order [Doc. No. 16] on August 17, 2010. The Scheduling Order provided that discovery was to be completed by May 1, 2011 and that all dispositive motions were to be filed, briefed and scheduled for hearing prior to July 1, 2011. (Scheduling Order at 1-2 [Doc. No. 16].)

In February 2011, the lawsuit initiated by Rud, <u>Webster Grading v. Granite Re</u>, was consolidated with a separate suit filed in this Court, <u>Nyen Excavating, Inc. and Granite Re, Inc. v. United Fire & Casualty Co.</u> (Order Consolidating Cases [Doc. No. 21].) The Pretrial Scheduling Order applicable to the <u>Nyen</u> lawsuit set forth a discovery deadline of August 1, 2011 and a dispositive motion deadline of October 1, 2011. (Pretrial Scheduling Order at 1-3 [Doc. No. 22-10].)

On March 9, 2011, Rud served a Demand for Arbitration on Nyen, to which Nyen did not respond. (Demand for Arbitration, Ex. A to Hart Aff. [Doc. No. 32-1].) Rud initially filed a motion to compel arbitration on August 18, 2011. (Motion to Compel Arbitration [Doc. No. 25].) The depositions of Dean Trahan and Tony Nyen were held on October 26, 2011. (<u>See</u> Trahan Dep. & Nyen Dep. Exs. D & F to Nyen's Opp'n Mem. [Doc. Nos. 38-4 & 38-6].) On November 14, 2011, Rud filed the instant motion, the Amended Motion to Compel Arbitration and Stay this Action [Doc. No. 29]. Pursuant to the parties' stipulated agreement, the hearing on Rud's Amended Motion was rescheduled and the briefing period was extended. (Order of 11/22/11 [Doc. No. 36].) The hearing was held before the undersigned on January 5, 2012.

In support of its motion, Rud argues that the CPA is a valid agreement, that the scope of the parties' dispute falls within the CPA, and that pursuant to the CPA, any disputes arising out

of the CPA, including issues regarding the formation of the CPA, are subject to mandatory arbitration.  In response, Nyen argues that there is no valid agreement to arbitrate.  Rather, Nyen contends, it rescinded the CPA and no subsequent agreement was ever reached.  Nyen further argues that claims limited to Nyen and Rud are not covered by the CPA in any event, because the CPA is intended to address pass-through claims.  Finally, Nyen contends that even if the CPA were a valid and enforceable agreement, Rud has waived any right that it might have had to arbitrate by proceeding to litigate the dispute and failing to provide notice of its intent to arbitrate sooner.

### III.    DISCUSSION

The Federal Arbitration Act (the "FAA") establishes a federal policy favoring arbitration that requires courts to rigorously enforce agreements to arbitrate.  <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987) (citations and internal quotation marks omitted).  Section 2 of the FAA provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2.  While a general presumption exists in favor of arbitration, see <u>Lyster v. Ryan's Family Steak Houses, Inc.</u>, 239 F.3d 943, 945 (8th Cir. 2001) ("The Federal Arbitration Act . . . declares a "'liberal federal policy favoring arbitration agreements.'") (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24 (1983)),  the presumption can only be triggered by a valid arbitration agreement. Consideration of a motion to compel arbitration under the FAA involves a two-step inquiry: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute falls within the scope of that arbitration agreement.  <u>Simitar Entm't, Inc. v. Silva Entm't</u>, 44 F. Supp.2d 986, 992 (D. Minn. 1999) (Erickson, Mag. J.)   In

engaging in the two-step inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999).

The Eighth Circuit has noted that when addressing waiver in the context of the arbitrability of a dispute, it does so "against the backdrop that,'[i]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration.'" Dumont v. Saskatchewan Gov't Ins., 258 F.3d 880, 886 (8th Cir. 2001) (quoting Ritzel Commc'ns v. Mid-American Cellular, 989 F.2d 966, 968-69 (8th Cir. 1993)). A party waives its right to arbitrate where that party "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel, 989 F.2d at 969 (citing Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991)). The issue of waiver of arbitration is one of law. Dumont, 258 F.3d at 886 (citing Ackerberg v. Johnson, 892 F.2d 1328, 1332 (8th Cir.1989)).

The Court addresses the issue of waiver first because if Rud waived its right to arbitrate the claims at issue, the Court need not consider the parties' arguments regarding the CPA. Rud argues that the issue of waiver is for the arbitrator to decide, and not the Court. It is true that, in certain circumstances in which an arbitration agreement requires particular procedural prerequisites, waiver is a procedural issue that is to be determined by the arbitrator. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (whether party failed to comply with the six-year time limit for submitting claims for arbitration set forth in agreement was a procedural matter for the arbitrator to decide); Int'l Assoc. of Bridge, Structural, Ornamental and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Constr. Products, Inc., 359

F.3d 954, 956 (8th Cir. 2004) (whether failure to comply with pre-arbitration steps in grievance procedure constituted waiver was an issue an issue for arbitrator); Dominium Austin Partners L.L.C. v. Emerson, 248 F.3d 720, 728 (8th Cir. 2004) (whether party waived right to arbitrate because it failed to submit a demand was an issue to be decided in arbitration).  However, in these cases, the issue was whether the procedural mechanisms necessary for arbitration, set forth in the respective agreements proscribing arbitration, had been satisfied.  The Court finds these cases inapposite to the waiver argument here.  While the CPA proscribes arbitration in general, the CPA is silent as to any procedural steps necessary for arbitration.  Defendant does not argue that Rud has waived the right to arbitrate by somehow failing to comply with any procedural prerequisites to arbitration.  Rather, Defendant argues that Rud has waived its right to arbitrate by initiating this litigation, instead of demanding arbitration, proceeding through all of discovery and responding to claims in the now-consolidated case without raising the issue of arbitration for many months.

Turning then to the first element of the three-part test set forth in Ritzel, Rud does not dispute that it knew of an existing right to arbitration arising out of or relating to the CPA.  The second element of the waiver test asks whether Rud acted inconsistently with its right to arbitrate.  "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invokes the litigation machinery before asserting its arbitration right.'"  Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090-91 (8th Cir. 2007) (quoting Ritzel, 989 F.2d at 969) (internal citations omitted).  The Eighth Circuit has found that the following actions demonstrate that a party has substantially invoked the litigation machinery: filing a lawsuit on arbitrable claims, engaging in extensive discovery or failing to move to compel arbitration and stay

11

litigation in a timely manner. Id. (citing Stifel, 924 F.2d at 158.) In Lewallen, the court found that defendant Green Tree had acted inconsistently with its right to arbitrate by serving extensive discovery requests, filing substantive motions and participating in multiple hearings prior to seeking arbitration. Id. In fact, Green Tree delayed asserting its right to arbitration for a sixteen-month period. Id. at 1091. In addition, the court found that Green Tree's actions in serving lengthy discovery requests were inconsistent with its right to arbitrate. Id. at 1093. In Ritzel, where the Eighth Circuit upheld the denial of a request for arbitration, not only did several defendants continue to litigate the merits of their case while simultaneously moving for arbitration, they engaged in full discovery, culminating in a six-day bench trial. 989 F.2d at 970.

In contrast, in Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998), the court found that the party seeking arbitration had not acted inconsistently, because it had resisted litigation and persuaded the district court to dismiss the plaintiff's lawsuit in favor of arbitration. Likewise, in Dumont, 258 F.3d at 886-87, the court found no inconsistency where the party seeking arbitration, SGI, took no action with respect to the merits of the case prior to the district court ordering arbitration. Moreover, SGI repeatedly offered to engage in arbitration and warned the plaintiff that it would seek to compel arbitration. (Id.)

Here, the facts demonstrate that Plaintiff substantially invoked the machinery of litigation, acting inconsistently with the right to arbitrate. Not only did Plaintiff initiate this litigation in state court in May 2010, it waited over ten months to serve a demand for arbitration on Nyen, and did not move to compel arbitration until August 2011 – fifteen months after initiating the litigation. Between those dates, the machinery of litigation proceeded. A pretrial scheduling order was entered in both of the two cases. In its June 2010 Reply to Granite Re's

Counterclaim, Rud made no mention of arbitration. (Reply to Counterclaim [Doc. No. 38-11], Ex. K in Supp. Nyen's Opp'n Mem.) Nor did United Fire (on Rud's behalf) assert arbitration in answering the separate suit filed by Nyen and Granite Re in December 2010. (Answer to Am. Compl. [Doc. No. 22-6].)

Moreover, the parties have engaged in full litigation discovery addressing the merits of the case. (See, e.g., Trahan Dep., Ex. D to Nyen's Opp'n Mem. [Doc. No. 38-4]; Nyen Dep., Ex. F to Nyen's Opp'n Mem. [Doc. No. 38-6].) Various documents attached as exhibits to the parties' affidavits related to this motion appear to have been produced or received in discovery. At least two witnesses, Dean Trahan and Tony Nyen, were deposed in October 2011. Rud filed the Amended Motion to Compel Arbitration in November 2011. The matter is ready for trial and will be tried by this Court at the end of September. While Rud argues that the facts of this case are more like those in Barker than in Ritzel, the Court disagrees. While the case has not proceeded through trial, as in Ritzel, Rud's actions are quite unlike those before the Court in Barker, where the party seeking arbitration had actively resisted litigation. In short, Rud has acted utterly inconsistently with the right to arbitrate.

As to the third element in the three-part test – whether the delay in seeking arbitration has prejudiced the other party – prejudice may result from "lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." Stifel, Nicolaus & Co., 924 F.2d at 159 (citing Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985)). While a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of the intent to arbitrate, delay in seeking to compel arbitration does not itself constitute prejudice. Id. (citations

omitted).

In Lewallen, the court found that the plaintiff was prejudiced in incurring expenses in the discovery process, regardless of whether the prepared discovery responses had been completed or delivered. 487 F.3d at 1093. In Ritzel, as noted, the Eighth Circuit found substantial prejudice where the party seeking arbitration tried its case in a six-day bench trial and failed to raise arbitration and/or a stay of proceedings. 989 F.2d at 971. In Hormel Foods Corp. v. Chr. Hansen, Inc., 13 Fed. Appx. 452 (8th Cir. 2001), while the Eighth Circuit did not engage in any detailed discussion, it found that the element of prejudice was satisfied, albeit on different grounds than the district court, and affirmed the district court's finding of waiver. However, in Stifel, Nicolaus & Co., 924 F.2d at 158, while the Eighth Circuit found that the plaintiffs acted inconsistently with their right to arbitrate, the court concluded that the defendants were not prejudiced. In that case, almost seven months after filing their lawsuit, and after conducting written discovery, the plaintiffs moved the district court to compel arbitration. Id. The Eighth Circuit affirmed the district court's order granting the motion to compel arbitration, concluding that the defendants were not prejudiced by the plaintiffs' actions in initiating litigation and waiting three months after the defendants filed their amended counterclaim before moving to compel arbitration. Id. at 159.

The Court finds the facts of this case support a finding of prejudice. This dispute concerns work that was performed in 2009, pursuant to a 2009 subcontract. (Rud/Nyen Subcontract, Ex. B to Nyen's Opp'n Mem. [Doc. No. 38-2].) The contested CPA was signed in October 2009. (CPA, Ex. A to Trahan Aff. [Doc. No. 33-1].) Rud commenced litigation in May 2010 and gave no notice of its intent to arbitrate until it served a demand in March 2011. It did

not move to compel arbitration until August 2011, fifteen months after filing suit in state court. Nyen has expended time and resources responding to the litigation, including participation in the Rule 26 conference and full discovery.  Not only did Rud initiate its own litigation, its actions in filing the instant suit may have influenced Nyen to file the related suit, now consolidated, against United Fire, which issued Rud's performance and payment bonds.  Even after Rud was brought into the related suit as a defendant, it failed to raise arbitration as an affirmative defense. See PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 109 (2nd Cir. 1997) (although failure to assert arbitration as a defense does not itself indicate default in proceeding to arbitration, it can evidence an intent to litigate the matter rather than arbitrate).  If Rud believed it had a valid, enforceable agreement to arbitrate the disputes at issue with Nyen, it is difficult to understand its delay until March 2011 before serving a demand to arbitrate.  Because the parties have expended time and resources in the machinery of litigation, including discovery, the Court finds that granting Rud's motion to compel arbitration and stay the litigation would prejudice Defendant.  For all of these reasons, the Court concludes that Rud has waived its right to arbitrate its dispute with Nyen.

Because the Court finds the issue of waiver dispositive of Rud's motion, it does not address the parties' additional arguments.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

The Amended Motion to Compel Arbitration and Stay [Doc. No. 29] filed by Webster Grading, Inc. is **DENIED**.

Dated:   July 16, 2012                                             s/Susan Richard Nelson
                                                                                    SUSAN RICHARD NELSON
                                                                                    United States District Judge